Case number 24-5261, Andi Gjoci et al. Appellants, United States Department of State and Mark Rubio, the Secretary of State. Ms. Glazer for the appellants and Ms. Osterberg for the appellees. I only see one person seated. Oh, I'm sorry. This is the one that's going to be remote. Thank you so much. Okay, we can proceed. May it please the court. Good morning, Your Honors. Nicolette Glazer appearing on behalf of the plaintiff appellants in this matter. I have reserved three minutes of my time for rebuttal, if I may. Your Honor. Your Honors, there are two issues before this court in this second time before this court for this case, and that is whether the appellants' non-good luck claims remain viable and whether the court can provide any relief. We respectfully submit that the answer to both is yes. However, following the remand in Gjoci 2, the district court found that because of the intervening decision of good luck, a disjointion of the litigation, the issue of merits and standing merged, and the court denying the opportunity for plaintiffs to amend, supplement, and clarify their non-good luck claims, proceeded to grant a stale motion to dismiss and found that because it is the district court decision was erroneous as a matter of law, fact, and procedure. Are there still pending any DS-260 applications? Yes, Your Honor, they are. The DS-260 are the immigrant visa petitions that were filed by each of these plaintiffs. Each was filed documentally qualified. They have been accepted by the Department of State, obviously. Some of them even paid the filing fees that were required. If I can explain perhaps one of the issues that we raised, and that goes to the issue of regressibility, is the importance of the practical, real-life magnitude importance of those pending DS-260 applications. Your Honors, if any of these plaintiffs is to appear for a non-immigrant visa interview at a consulate, this pending DS-260 will pretty much automatically result in a denial of the non-immigrant visa application because of the doctrine of preconceived immigrant intent, and that is INA section 214b, which says that an individual, a non-immigrant, has to show that they are not intending to immigrate in order to receive such a non-immigrant visa. Well, obviously, a DS-260 still pending will be a clear-cut decision for a consular officer, or even for a CBP inspector, to say you are an intending immigrant. But more of the problem is that how would an applicant be able to respond to a question of what is the status of their DS-260? If they are to say that the application is denied, well, that will be a misrepresentation. If they are to say that the application is still pending, obviously, it raises again the issue of the immigrant intent. Do I simply say what happened, that their year ran out and they never got an adjudication? Well, unfortunately, many of these people have a very limited English sufficiencies, and being at let's say at the port of entry with a CBP inspector, having to decide on a spot of miscibility or a consular officer, it's difficult for this plaintiff to be able to explain. More importantly, the DS-260 is the same application an applicant will file for a DV application, for a family-based immigrant visa, employment-based visa. The consular officer sometimes will not have access to all the documents, let's say, what the CBP inspector may not have. So it's difficult to put that pressure on an applicant. And I will point the court to the recent decision of the Supreme Court in Patel, where the court observed the draconian consequences that come to an immigrant in answering a question, even if that question is made a mistake or a confusion or not. The consequences for a misrepresentation are In the context of inadmissibility, under section 212c, if an adjudicator finds that there's a misrepresentation of facts, which leads with respect to benefit, which that will consider, then there's a lifetime bar. A person will never be able to obtain any immigration benefits. So this pending DS-260 are not some mundane issue, as the police suggest, but it's a real-life impediment that was brought on this plaintiff to no fault of them. We're not asking for the officers to elaborate or explain. They could simply post a notice that all DV applications for DV-2021 are considered denied for lack of eligibility or the passage of time. But that will bring a conclusion to a decision making, and that will both terminate those pending DS-260 in all the immigration systems, and also will provide a clear decision of how an applicant can respond. And I believe that part of redressability is clear. Now, the court below could have decided on a merit that provided a discretion or if it's a matter of merit, the court will not grant either a declaration or any form of an injunction or a prohibitory injunction, a mandatory injunction, or anything. But that was not what this district court did. Rather, the district court found that because of the good luck case, he cannot give any redress. But the good luck case didn't address these issues and didn't even address the claims that are remaining in this particular case. Rather, the good luck decision simply addressed the authority of a district court, what they can now do with respect to visas. It did not say anything as to what an agency could do. And that is a big decision, and I will point the court to a line of Supreme Court, such as Brock v. Peay County, Bernhardt, that have said that even after the passage of time, if an agency does something, so long as the statute has not put in consequences for the act, then the agency can do something even if the passage of time has passed, or even in violation of 1154. Jana, my time, I think, has expired. Any questions? No. Okay, thank you. We'll hear from you on rebuttal. Good morning, Your Honors. May it please the Court, Kara Alsterberg on behalf of the United States. This Court conclusively resolved on the merits a dispositive question about what happens to diversity visas at the end of the fiscal year, which is that they expire, and that there's nothing that this Court or a district court could do to extend that deadline beyond the fiscal year end. Acknowledging good luck in Joshi, too, appellants seem to be aware that there is nothing left for them, that there is no remedy available with regards to their diversity visa 2021 applications. Well, she was indicating that they would need a response of some sort, and so are you suggesting that the response is that they've expired? Yes, and that the question about the form DS-260 is a bit of a red herring. The DS-260s are a part of what would make a diversity visa application, but that application isn't formal until the interview happens. None of these plaintiff appellants had an interview. Therefore, there was never actually a formal diversity visa application made, and to the extent, as the district court found, that the State Department's simply going to adjudicate DS-260s from a fiscal year that expired four years ago only to deny them all seems futile, given that we know that there's no remedy to address at that point. Curiously, was the $55,000 cap ever met with respect to diversity visas? So, for 2021, it was $18,000. In 2022, $55,000. In 2023, $55,000. In 2024, $55,000. If one of the appellants were to file a request for a tourist visa, would the existence of the prior application show up in the CO's records? This hypothetical, we don't have evidence of that actually happening in this case. Even appellants just now indicated that if they seek such a thing, that it might be detrimental. One or more of them has relatives in the U.S., so they're likely to be seeking at least an immigrant visa, I mean a tourist visa. So, to get a non-immigrant visa, that individual would still have to prove to the consular officer that they're entitled to such a non-immigrant visa, and the Department of State clarified in a brief footnote that in this hypothetical situation, that individual, to the extent that pending DS-260 from something four years ago was something that showed up, that individual would be able to clarify that they were one of the many individuals that was seeking an opportunity to be selected in the diversity visa lottery. How many people are in that category? Well, so millions of people apply. It's like a lottery in a lottery, if you will. So, millions of people apply to be even selected to be part of the diversity visa lottery, and then the State Department always over-selects the number of people that could even be at the $55,000 cap because it recognizes that there might be different impacts. They're trying to hit that number, but so they over-select. So, for fiscal year 2021, I believe, including beneficiaries, it was 133,000 people vying for one of the 55,000 available, and then given the context of the pandemic and the other issues with consulates worldwide, that number was, as I said, only 18,000. It must be common knowledge that there are lots of applications within the consular service, that there are lots of applications that never get adjudicated. Yes. And indeed, if you look at a year when there was COVID, even more so. Yes. And there's also a point here with the difference between the DS-260 form and the formal diversity visa application. The application only happens at that interview. If the interview doesn't happen, there really hasn't been... But is the filing of the form a matter of record that shows up years later when someone... Or that could show up years later? It could, but from my understanding, it does not appear that that's something that's lingering. There's not a formal application on file. It's perhaps just a form DS-260 that was part of what was going to make an individual documentarily qualified to even get to that next step of the interview. And so when the application expires, that's over. If you want to apply again, you just start the process over in the next year? Yes. And there's nothing to stop an individual from trying to enter the diversity visa lottery over and over again. Okay. That's what I'm going to ask. The fact that you've applied and even failed, you still can have the opportunity to apply again later? Well, if you failed for a dispositive reason, like you went to that interview and you were found to not be admissible into the United States for some crime, yes. So expired is a non-adjudicative term? Yes. If you just happen to be one of the many over-selectees, if you will, one of the 133,000 vying for the 55,000 and your number never came up, you never finished, for whatever reason that it didn't follow through, you can apply again. Okay. And what about the appellant's challenge to just kind of some State Department conduct of intentional delay and not allowing them to be in the process? And why wouldn't this court do something about that? And I think for the same reason that the Good Luck and Josie Court found remedy to be dispositive, that still is dispositive. There has been no indication of bad faith or feet dragging. That was one of the many questions on appeal for the Good Luck case was, was the prioritization guidance lawful? Was, you know, was there any undue delay? The court at that juncture, aware of all of the many issues before it still just focused in on the remedy factor. So here that remedy piece is still very much dispositive. There is no live claim or controversy before this court anymore. All of those policies are long since rescinded. Some of them were even rescinded back when plaintiff appellants, in this case, even filed their amended complaint. And there's no indication in terms of like a voluntary cessation question. There's, you know, that was a once in a lifetime pandemic. As far as you're concerned, we're back to normal procedures? Yes. Okay. No pending executive order or anything ceasing this process? Well, that I'm unaware of. But yeah, based on the historical data, it's, it's clear that things have been running normal. State Department's hitting $55,000. And there's nothing stopping, stopping them. Other questions? Okay. Thank you. All right. I believe you've reserved three minutes for rebuttal. So we're happy to hear again. Yes, Your Honor. I would address one, two aspects of what my very esteemed colleague addressed with the court. First with the DS-260. I completely disagree with counsel. The form DS-260 is filed when the individual, it's online, it's completed, it is signed, it's accepted by the electronic system of the Department of State, and it stays there until it is adjudicated. Even after it is adjudicated, it remains to be a record. I can tell you, Your Honor, there are visa applications that applicants had filed 30 years ago that will show up, it will be considered, and sometimes they are impediment to eligibility. So what counsel was observing is whether the consular office has formally adjudicated the visa application, which happens when the individual appears at the interview in person and then swears against and receive a decision. That did not happen. But that does not change in any way the fact that the DS-260 applications are still pending and active in that system. Now, the other aspect is, contrary to my esteemed colleague, currently there is a visa ban. Why don't you agree with her term that they actually get expired? Well, an application that is in a system does not expire. That's not something that I- But you're applying for a particular fiscal year. Correct. I'm not saying that the fiscal year has not expired. I'm saying that the record of an application that has a stated an immigrant intent remains in the Department of State visa. So that stated immigrant intent is still there. And based on Section 214B, it could impede, and I will say it absolutely will impede the ability of anybody to show non-immigrant intent, which is basically to say, I don't have a preconceived intent to be an immigrant. With the pending in the system, whether it is administratively closed, which is basically off the docket, but continue to be pending, it's still pending. It still shows that this individual has filed an application for an immigrant visa, and that application has not been completed. It goes to, again, a burden that the INA has put for non-immigrants that is extremely high. And that is, I will say, the vast majority of the denial of a non-immigrant visa. It is, you have not shown that you do not intend to immigrate to the United States. Ergo, you cannot have a B visa or you cannot get a student visa. So that is the particular real life issue here. If they simply deny them or close them conclusively, then the applicants could proceed. You have about, I don't know, it looks like 40 or more clients in this case. Has any of them applied for a non-immigrant visa since 2021? I believe we were concerned for them in applying because of that particular issue. Some of them have actual long-term visa also issued, and they are concerned to use them because they're concerned that there will be question about that and potentially found to be inadmissible in their long-term B2 visa be canceled. So they have, and advice of counsel, have not taken those steps because of concern that they may end up with a denial that will be a significant issue for them back down the road. So let me hear from you explicitly what you believe this court can do. Are you asking us to direct an agency to do something particular? Or what is it that you're actually seeking? We're asking the court to remand for the district court to decide the issue on the merit. The government has filed a motion to dismiss. So I'm pleading. So the district court will have to decide whether the complaint has met the requirements. Now the court can find that we have not met the plausibility requirement and deny it on the merits, but he didn't do that. So what we're asking the court is to remand for the district court to decide the defendant's motion to dismiss, which was a 12B6 motion, failure to state the claim. And then the court will decide. I think this is a factual issue. Obviously, we will need to address the dependency of the application, what the particular applicants have done, what they will intend to do. And then it becomes an issue to be decided by the court. Why isn't that relief barred by good luck? Good luck, your honor, only said what the court can now do in preserving visas. And that's what no, we are not asking. We're not asking the court to preserve a visa. We're not asking the court to issue a visa to this applicant. What we're asking is for the court to decide whether there is a bad fate, issue a declaratory judgment, and issue a very simple order that is complete this DSA 260, whether you say that is denied or you put on a website that all DS-60 who are not adjudicated by the end of the fiscal year are considered denied by lapse. A simple posting on their website will dispose of this issue and eliminate a barrier that the government has erected for these plaintiffs. But what but earlier the United States indicated that they're using the term expired. You're asking for a denial, but a denial is an adjudication. Correct. It is an adjudication of an application. Good luck did not address anything about application. In fact, 1154 does not speak of adjudication. It speaks of the expiration of eligibility. Where is there anything that says the DS-260 is a matter that involves something that can be adjudicated? Well, your honor, the obligation stems from 1202B as well as the regulation and as to 555 A&E, which require an agency to issue a decision on a matter before them. I believe that is the source. I haven't been able to figure out why you think the DS-260 involves something that can be adjudicated. It's a form. So what? It's an application. It's an application for a visa. Lots of application forms that don't get processed in all kinds of agencies and businesses that disappear at the end of the process. The process is over with. That's what good luck said. It's over. Well, the fiscal year is over, but the application is not. The application for that year is over. This is what good luck says. The district court had no authority to order the State Department to keep processing applications. They don't have the authority. I believe the good luck case said the court cannot order the agency to do something. The question that was not raised is whether it can be told. And that is the Supreme Court decision in Riley v. Bondi, which specifically in the immigration context said everything that is not jurisdictional is subject to tolling. That was not addressed in good luck because it was not argued and it was not pleaded. So if we issue an order that says you'll get your relief if we issue an order saying there's nothing we can do because the DS-260 does not involve a matter of adjudication, especially in situations covered by good luck and the discussion, that's it. You've got the relief you want. So no one can be harmed. There's a court order that's now sitting in the books that's saying there's nothing here that in any way impedes this person from doing something in the future. That will be a relief. Absolutely. That's not what the district court did not do that. It appears that you may get that from this court because that's I don't see how you have anything that can be adjudicated. Well, Yana, if that is a clarification, that will be a tremendous relief, not only to these plaintiffs, to the many people who have applications that are not adjudicated. There's probably 100,000 or more who potentially could be harmed. A decision of this court. Right. So you're saying to us that would be relief enough for you? Well, it will be a relief for that particular aspect of the non-good luck claim that we've pleaded. Yes. Okay. Thank you. Is there any other questions I can answer? No. Thank you. Thank you very much. Thank you, Your Honors. And the case is submitted.
judges: Childs; Edwards; Ginsburg